UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.:

STEVEN HUFF, individually,
and on behalf of all those similarly situated,

                Plaintiff,

vs.

BOBCAT NORTH AMERICA, LLC,
d/b/a ORION WASTE SOLUTIONS,
BOBCAT DISPOSAL OF SARASOTA, LLC.,
RUSSO AND SONS, LLC, M&MR OPERATIONS,
INC. formerly RUSSO AND SONS, INC.,
MIKE RUSSO, and MARILYN RUSSO,

                Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, STEVEN HUFF ("Mr. Huff"), individually, as Class Representative, and on behalf of all other similarly situated employees, by and through undersigned counsel, files an individual claim in Count I and a Representative Action in Count II of this Complaint against Defendants, BOBCAT NORTH AMERICA, LLC, d/b/a ORION WASTE SOLUTIONS ("Bobcat North America"), BOBCAT DISPOSAL OF SARASOTA, LLC. ("Bobcat Disposal"), RUSSO AND SONS, LLC, M&MR OPERATIONS, INC. formerly RUSSO AND SONS, INC., MIKE RUSSO, and MARILYN RUSSO (collectively "Defendants"), and further states as follows:

1

## INTRODUCTION

1.      Plaintiff brings this cause of action raising individual claims for unpaid overtime wages pursuant 29 U.S.C. § 207 (overtime provisions of the Federal Fair Labor Standards Act ("FLSA")) and a Representative Action pursuant to 29 U.S.C. § 216(b) (authorizing representative actions under the FLSA) seeking to represent a class of employees denied unpaid overtime pursuant to the FLSA.

2.      The FLSA prevents the exploitation of a class of workers who are in an unequal position with respect "to bargaining power and are thus relatively defenseless against the denial of a living wage is not only detrimental to their health and well being but casts a direct burden for their support upon the community. What these workers lose in wages the taxpayers are called upon to pay." *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 399 (1937)(Hughes, C.J.).

3.      Defendant utilized its unequal bargaining power to render defenseless Mr. Huff, and similarly situated employees, against the denial of the living wage which they are entitled to receive and that is protected by 29 U.S.C. § 207.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction to hear this Complaint pursuant to 28 U.S.C. § 1331.

5.      Venue is proper in this Court under 28 U.S.C. § 1391(b).

## THE PARTIES

6.      The Defendants provide waste disposal services to the construction industry.

2

7.     The Defendants provide dumpsters, portable bathrooms, grade crew services, and debris removal services in Florida and throughout the United States.

8.     Prior to May of 2017, Mike Russo and Marilyn Russo operated Russo and Sons, Inc. independent and apart from the other Defendants.

9.     In May of 2017, Bobcat North America acquired Russo and Sons, Inc. from Mike Russo and Marilyn Russo.

10.     At that time, Bobcat North America formed Russo and Sons, LLC.

11.     Russo and Sons, LLC now includes the assets and liabilities of Russo and Sons, Inc. (collectively referred to as "RSI").

12.     Mike Russo and Marilyn Russo changed the name of Russo and Sons, Inc. to M&MR Operations, Inc.

13.     Subsequent to May of 2017, Bobcat North America manages, oversees, and directs all aspects of Bobcat Disposal, RSI, and the enterprise as a whole.

14.     Bobcat North America, Bobcat Disposal, and RSI are a single enterprise.

15.     Bobcat North America, Bobcat Disposal, and RSI share the same officers and ownership.

16.     Bobcat North America, Bobcat Disposal, and RSI share a unified operation and common control of the organization.

17.     Bobcat North America houses the corporate officers, human resources, finance, accounting, technology, and administrators of the enterprise.

18.     With respect to RSI and Bobcat Disposal, Bobcat North America:

    a.   sets objectives and implements strategy;

3

b.  promotes the corporate brand;

c.  advertises and procures client contracts;

d.  hires and fires employees;

e.  supervises and controls employee work or conditions of employment;

f.  determines the rate and methods of payment; and

g.  maintains employment records.

19.  Bobcat North America maintains and operate facilities throughout the United States including Wisconsin, Georgia, Arkansas and Florida.

20.  Bobcat North America is headquartered in Sarasota, Florida.

21.  Bobcat Disposal is the South Florida branch of the Defendants that rents and delivers roll off dumpsters and portable toilets to construction sites, and performs other waste disposal services for Defendants' clients in Sarasota, Florida and the surrounding communities.

22.  Bobcat Disposal is also responsible for payroll services to other branches.

23.  RSI remains the Central Florida branch of the Bobcat North America that rents and delivers roll off dumpsters and portable toilets to construction sites, and performs other waste disposal services for Defendants' clients in Ocoee, Florida and the surrounding communities.

24.  Employees working in the Ocoee location drive RSI branded trucks and are required to purchase RSI uniforms but they are paid by Bobcat Disposal and their employment policies are set by Bobcat North America.

25.    At material times, Mike Russo, in relation to Russo and Sons, Inc.:

    a.  was an officer;

    b.  was involved in the day-to-day operation; guided company policies;

    c.  was actively engaged in the management, supervision, and oversight;

    d.  controlled financial affairs;

    e.  could authorize compliance with the FLSA and other laws;

    f.  acted directly or indirectly in the interest of the employer in relation to its employees and was substantially in control of the terms and conditions of the employees' work.

26.    At material times, MARILYN RUSSO, in relation to Russo and Sons, Inc.:

    a.  was an officer;

    b.  was involved in the day-to-day operation; guided company policies;

    c.  was actively engaged in the management, supervision, and oversight;

    d.  controlled financial affairs;

    e.  could authorize compliance with the FLSA and other laws;

    f.  acted directly or indirectly in the interest of the employer in relation to its employees and was substantially in control of the terms and conditions of the employees' work.

27.    Mr. Huff is a citizen of Florida who worked for Mike Russo, Marilyn Russo, and Russo and Sons, Inc. until it was purchased by Bobcat North America in May of 2017.

28.     Prior to May of 2017, Mr. Huff was paid for some but not all of the overtime wages owed to him.

29.     After May of 2017, Mr. Huff worked for Bobcat North America, Bobcat Disposal, and RSI.

30.     After May of 2017, Mr. Huff was paid for some but not all of the overtime wages owed to him.

31.     Mr. Huff retained LaBar & Adams, P.A. to represent him and the Class in this matter and agreed to pay said firm a reasonable attorney's fee and costs for its services.

## FACTUAL ALLEGATIONS

32.     Each defendant is an "employer" as defined by 29 U.S.C. § 203(d).

33.     Defendants were joint employers within the meaning of the FLSA. For example, hourly employees drove or rode in trucks with logos and branding of RSI, were required to purchase and wear RSI uniforms, but were paid by Bobcat Disposal, and had their conditions of employment controlled by Bobcat North America.

34.     Defendants have employees subject to the provisions of the FLSA, 29 U.S.C. § 207, in the facilities where Mr. Huff performed work.

35.     Defendants have employed two or more persons, including Mr. Huff, "engaged in commerce or in the production of goods for commerce," or has "had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by a person," as defined by 29 U.S.C. § 203(s)(1)(A)(i).

6

36.     Mr. Huff avers that at all times relevant to the violations of the Fair Labor Standards Act, the Defendants are an enterprise whose annual gross volume of sales made or business done was not less than $500,000, in accordance with 29 U.S.C. § 203(s)(1)(A)(ii).

37.     Mr. Huff was employed by Defendants from 2014 until 2018.

38.     Mr. Huff performed work for Defendants in Central Florida and operated out of their base facility in Ocoee, Florida.

39.     Mr. Huff also performed work for Defendants' customers at their local construction sites.

40.     Mr. Huff's job duties included, but were not limited to inspecting vehicles, operating heavy equipment, loading and unloading equipment, driving trucks, delivering equipment to customers, and performing manual labor in service to Defendants' clientele.

41.     At all times relevant to employment, Mr. Huff regularly used the instrumentalities of interstate commerce while performing work.

42.     At all times relevant to employment, Mr. Huff also regularly used the channels of commerce while performing work.

43.     Throughout his employment, Mr. Huff was paid an hourly rate plus overtime for some but not all hours worked by Defendants.

44.     Throughout his employment, Mr. Huff worked numerous workweeks where his hours exceeded forty but he was not paid time-and-a-half for each overtime hour worked.

45.     Mr. Huff was routinely required to come into work before the official start of business to inspect his vehicle for the day's work.

46.     Throughout his employment, Mr. Huff was subjected to Defendants' timesheet manipulation practice.

47.     Defendants' regularly and routinely adjusted or manipulated Mr. Huff's timesheets to reflect a later start time of 6 a.m. in order to reduce overtime compensation.

48.     Defendants implemented a practice whereby Mr. Huff's timesheets were manipulated, without his knowledge, after work had been completed to reflect that he worked less time.

49.     At the Ocoee location, Defendants "officially" opened for business at 6 am each workday, but Mr. Huff regularly commenced work at 5:30 a.m.  When work before 6 am was performed, Defendants adjusted the timesheets to reflect a later start time.

50.     Defendants implemented a common practice wherein work performed before or after their "official hours of operation", would not be compensated, although Defendants required employees perform the uncompensated work before and after the hours of operation.

51.     Defendants' timesheet manipulation practice was not limited to any job title, but was applied across hourly employees with similar job duties as Mr. Huff.

52.     Throughout his employment, Mr. Huff was subjected to Defendants' automatic lunch break deduction policy where Defendants subtracted thirty minutes daily off his timesheets even though he did not take a lunch break or the lunch break was interrupted.

8

53.     Despite knowing that meal breaks were not taken, Defendants automatically deducted thirty-minute meal breaks from Mr. Huff's timesheets.

54.     Defendants knew or should have known that Mr. Huff was not breaking for lunch.

55.     Mr. Huff was not able to have a meal break on most days, and usually worked through lunch, but was not compensated for this time as a result of Defendants' policy.

56.     Mike Russo and Marilyn Russo had actual knowledge that employees, including Mr. Huff, were working overtime without proper compensation.

57.     Mike Russo and Marilyn Russo could have forced compliance with FLSA rules and regulations, but decided against complying with the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

58.     Mr. Huff brings Count II under the Fair Labor Standards Act as a collective action, and will request the Court to grant conditional class certification under 29 U.S.C. § 216(b).

59.     Mr. Huff, as Class Representative, seeks to prosecute this matter on behalf of himself and similarly situated employees who were all subject to the same common plan and practices complained of herein.

60.     Mr. Huff is similarly situated to employees that:

a.  worked out of the Ocoee location;

b.  were paid an hourly rate for job duties that included driving trucks, operating equipment, and performing manual labor; and

9

      c.   were subjected to the Defendants' common policies and practices complained of herein.

61.    While working for Defendants, Mr. Huff and other similarly situated employees, were subject to the same practice of denying proper overtime compensation to its employees because of two policies and practices:

      a.   the timesheet manipulation practice, where employees' timesheets were manipulated, without their knowledge, after work had been completed to reflect that less time was worked; and/or

      b.   the automatic lunch deduction practice, where Defendants automatically subtracted thirty minutes daily off employee timesheets even though a lunch break was not taken or the lunch break was interrupted.

62.    Throughout their employment, Mr. Huff, and other similarly situated employees were subjected to Defendants' timesheet manipulation practice.

63.    Throughout their employment, Mr. Huff, and other similarly situated employees were routinely required to come into work before the official start of business to inspect vehicles for the day's work.

64.    Throughout their employment, Mr. Huff, and other similarly situated employees had their timesheets manipulated and adjusted, without their knowledge, to reflect less time worked.

65.    Throughout their employment, Mr. Huff, and other similarly situated employees were subjected to Defendants' automatic lunch deduction practice.

66.     Throughout their employment, Mr. Huff, and other similarly situated employees were subject to Defendants' practice of subtracting thirty minutes off employee timesheets on a daily basis even though a lunch break was not taken or the lunch break was interrupted.

67.     Defendants' payroll system automatically deducted thirty minutes each day during the workweek (Monday – Friday) from Mr. Huff's, and other similarly situated employees' timesheets and payroll records, regardless of whether an uninterrupted lunch break was taken.

68.     Defendants had knowledge that Mr. Huff and other similarly situated employees were working overtime without proper compensation.

69.     As a result of the Defendants' unlawful practices, throughout their employment, Mr. Huff, and other similarly situated employees worked numerous workweeks where their hours exceeded forty but they were not paid time-and-a-half for each overtime hour worked.

70.     Defendants failed to make a good faith effort to determine if Mr. Huff and similarly situated employees were compensated appropriately pursuant to the FLSA.

71.     Defendants failed to maintain and keep accurate time records as required by the FLSA.

72.     Defendants also failed to post the required notice pursuant to the FLSA.

73.     Defendants' unlawful compensation practices are in willful disregard of the rights of Mr. Huff and other similarly situated employees.

74.     Mr. Huff, as Class Representative for a group of similarly situated individuals, will seek conditional certification of two classes of employees with similar job duties who were paid hourly while working at the Ocoee location, during the relevant claim period, and were subject to either or both of the following common policies:

    a.  the timesheet manipulation practice, where employees' timesheets were manipulated, without their knowledge, after work had been completed to reflect that less time was worked; and/or

    b.  the automatic deduction practice, where Defendants automatically subtracted thirty minutes daily off employee timesheets even though a lunch break was not taken or the lunch break was interrupted.

**COUNT I**
**PLAINTIFF'S INDIVIDUAL CLAIM**
**AGAINST DEFENDANTS FOR VIOLATIONS OF THE**
**OVERTIME PROVISION OF THE FAIR LABOR STANDARDS ACT**

75.     The allegations contained in paragraphs 1-57 above are realleged herein.

76.     By way of tolling agreement between the Parties, the applicable statute of limitations extends back two or three years (upon a finding of willfulness) from March 8, 2019.

77.     Defendants actions were willful and thus the claim period for Mr. Huff extends to March 8, 2016.

78.     At all relevant times, Defendants repeatedly and willfully violated § 7 and § 15 of the FLSA by failing to compensate Mr. Huff at a rate not less than one and one-

half times the regular rate at which he was employed for workweeks longer than forty (40) hours.

79.     Specifically, Mr. Huff worked numerous weeks in excess of forty (40) hours a week, yet was not compensated for all work in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he was employed.

80.     Defendants willfully failed to maintain and keep accurate time records as required by the Fair Labor Standards Act.

81.     Defendants failed to post the required notice pursuant to the Fair Labor Standards Act.

WHEREFORE, Mr. Huff, individually, demands judgment against Defendants, jointly and severally, for the following:

(a)     Unpaid overtime wages found to be due and owing;

(b)     An additional equal amount equal to the unpaid overtime wages found to be due and owing as liquidated damages;

(c)     Prejudgment interest;

(d)     A reasonable attorney's fee and costs; and,

(e)     Such other relief as the Court deems just and equitable.

## **JURY TRIAL DEMAND**

Plaintiff demands a jury trial on all issues contained in Count I.

**COUNT II**
**COLLECTIVE ACTION BY CLASS REPRESENTATIVE**
**FOR VIOLATIONS OF THE OVERTIME PROVISION OF THE FAIR LABOR**
**STANDARDS ACT**

82.     Mr. Huff, as Class Representative, re-alleges and incorporates herein the allegations contained in paragraphs 1-74 above.

83.     By way of tolling agreement between the Parties, the applicable statute of limitations extends back two or three years (upon a finding of willfulness) from March 8, 2019.

84.     Defendants actions were willful and thus the claim period for Mr. Huff, as Class Representative, and all other similarly situated employees, extends to March 8, 2016.

85.     Mr. Huff, as Class Representative, and all other similarly situated employees, were employed by Defendants during the relevant limitations period.

86.     Throughout the employment of Mr. Huff, as Class Representative, and all other similarly situated employees, Defendants repeatedly and willfully violated § 7 and § 15 of the Fair Labor Standards Act by failing to compensate the Class Representative and all other similarly situated employees, at a rate not less than one and one-half times the regular rate at which they were employed for workweeks longer than forty (40) hours.

87.     Specifically, Class Representative, Mr. Huff, and all other similarly-situated employees worked numerous weeks throughout their employment in excess of forty hours a week, yet were not compensated for all work in excess of forty hours at a rate not less than one and one-half times the regular rate at which they were employed because: (1) their

timesheets were manipulated; and/or (2) because they were subjected to automatic lunch deductions even though they did not take the break.

88.     Defendants failed to maintain and keep accurate time records as required by the FLSA.

89.     Defendants failed to post the required notice pursuant to the FLSA.

WHEREFORE, Mr. Huff, as Class Representative, on behalf of himself and similarly situated employees, demands judgment against Defendants, jointly and severally, for the following:

(a)     Unpaid overtime wages found to be due and owing;

(b)     An additional equal amount equal to the unpaid overtime wages found to be due and owing as liquidated damages;

(c)     Prejudgment interest;

(d)     Reasonable attorney's fee and costs; and,

(e)     Such other relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

Class Representative on behalf of himself and similarly situated employees, demands a jury trial on all issues contained in Count II.

Respectfully submitted,

Dated:  May 6, 2019                      */s/ N. Ryan LaBar, Esq.*
                                         N. RYAN LABAR, ESQ.
                                         Florida Bar No.: 0010535
                                         Email: rlabar@labaradams.com
                                         SCOTT C. ADAMS, ESQ.
                                         Florida Bar No.: 0573442
                                         Email: sadams@labaradams.com
                                         LABAR & ADAMS, P.A.
                                         2300 East Concord Street
                                         Orlando, Florida 32803
                                         (407) 835-8968 (phone)
                                         (407) 835-8969 (facsimile)