# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**STEVEN HUFF,**

       **Plaintiff,**

v.                                             **Case No:  6:19-cv-861-Orl-37DCI**

**BOBCAT NORTH AMERICA, LLC,
BOBCAT DISPOSAL OF SARASOTA,
LLC, RUSSO AND SONS, LLC, M&MR
OPERATIONS, INC., MIKE RUSSO and
MARILYN RUSSO,**

       **Defendants.**

### REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motion:

> **MOTION:**    Joint Motion to Approve Settlement (Doc. 108)
>
> **FILED:**       November 9, 2020
>
> ---
>
> **THEREON** it is **Recommended** that the motion be **GRANTED in part and DENIED in part**.

**I.    Background**

Plaintiff brought this collective action on behalf of himself and similarly situated individuals alleging violations of the Fair Labor Standards Act. Doc. 1. By Order dated March 31, 2020, the Court granted Plaintiff's motion for conditional certification and court-authorized notice pursuant to 29 U.S.C. § 216(b). Doc. 70. The Order defined the conditionally certified class, directed Defendant to provide Plaintiff with the names of all putative members of the class,

approved the agreed-upon notice, and directed Plaintiff to send that notice to all putative class members. *Id*. Even prior to conditional certification twelve persons had opted in and after notice another twenty-nine opted in, for a total of forty-two including Plaintiff (altogether the Settlement Collective). Doc. 108 at 3-4. The parties have reached a settlement.

The parties then filed the Joint Motion for Approval of Settlement. Doc. 108 (the Motion). Attached to the Motion is the Settlement Agreement signed by Plaintiff and the attached Settlement Collective Chart showing the payment to each member of the Settlement Collective (Doc. 108-1, the Agreement), the forty-one signed Notices of Acceptance from the Opt-In Plaintiffs (Doc. 108-2), and the separately agreed-to general release as to Plaintiff (Doc. 108-3). For the reasons stated in this Report, the undersigned recommends that the Court approve the settlement.

**II.     Certification**

In December 2019, Plaintiff moved to certify the class pursuant to 29 U.S.C. § 216(b). Doc. 61. Plaintiffs contended that Defendants violated the FLSA in two ways (collectively, the Subject Practices). First, by a practice of rounding weekday timeclock clock-in entries to 6:00 a.m., and second, by a weekday automatic 30-minute lunch deduction. Defendants disputed that conditional certification was appropriate. Nevertheless, on March 31, 2020, the Court conditionally certified a class of persons who were: (1) employed as drivers by Bobcat North America, LLC, d/b/a Orion Waste Solutions, Bobcat Disposal of Sarasota, LLC, Russo and Sons, LLC, M&MR Operations, Inc. formerly Russo and Sons, Inc., Mike Russo or Marilyn Russo at the Ocoee, Florida location during the three years preceding March 8, 2019; (2) paid an hourly rate and (3) alleged unpaid overtime wages due to the Subject Practices. The Order also appointed Plaintiff as class representative, N. Ryan Labar and Scott C. Adams of LaBar & Adams, P.A. as Class Counsel, approved the proposed class notice and consent forms (Docs. 61-2 and 61-3) and established a

filing deadline for consent-to-join forms of ninety-days after the notice and consent forms were served. Doc. 70 at 11-12. Pursuant to the Court's Order, on April 15, 2020, Class Counsel sent court-approved notices to 111 putative class members that had not already joined this action. An additional twenty-nine (29) putative class members timely returned consents to join, resulting in the 42-member Settlement Collective. Prior to final certification or decertification of the class, the parties reached a settlement of the claims. The parties request the Court approve their settlement agreement, but make no requests concerning final certification. But the issue remains outstanding, and the undersigned finds it necessary to address it prior to considering the terms of the Agreement.

The undersigned finds that final certification or decertification is not necessary for approval of the settlement. It appears that the majority of approvals in other FLSA collective action settlements in the Middle District of Florida did not require such action. *See Ortiz v. Metters Indus., Inc.*, 6:17-cv-1879-PGB-DCI, Doc. 133, *report and recommendation adopted* at Doc. 133 (M.D. Fla. August 16, 2019) (citing to *Harris v. Performance Transportation LLC*, case no. 8:14-cv-02913-SDM-AAS (M.D. Fla. Oct. 27, 2016)). Further, there appears to be no binding precedent that requires different treatment of FLSA collective actions versus FLSA individual actions. Some district courts will make a determination concerning final certification (i.e. whether the plaintiffs are similarly situated), while other district courts deem such consideration unnecessary. *Compare*, *e.g.*, *Ruddell v. Manfre*, 2015 WL 7252947, at *1-3 (M.D. Fla. Nov. 17, 2015) (deeming consideration of final certification necessary), with *Campbell v. Pincher's Beach Bar Grill Inc.*, 2017 WL 2700629, at *1-2 (M.D. Fla. Aug. 24, 2017), *report and recommendation adopted*, 2017 WL 3668889 (deeming consideration of final certification unnecessary).

The undersigned finds persuasive the authorities in which courts approved a settlement at the conditional certification stage without requiring final certification. This course of action seems

to be particularly appropriate here, where Plaintiff has signed the Agreement and all other members of the Settlement Collective (i.e. all of the opt-in plaintiffs) have signed Notices of Acceptance stating that they have reviewed and agree to the Agreement. Doc. 108-2. Moreover, Defendants never moved for decertification and the case settled prior to discovery closing, to the parties filing any dispositive motions, and to the case being ready for trial.

Upon consideration, the undersigned **RECOMMENDS** that the request for approval of settlement proceed while the case is in the conditional certification stage.

### III.     Legal Framework for Consideration of the Agreement

In *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982), the Eleventh Circuit addressed the means by which an FLSA settlement may become final and enforceable:

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. . . . The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer and under section 216(b) to recover back wages for FLSA violations. When employees bring a private action or back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

Since the parties have submitted a motion, the Court must scrutinize the attached Agreement to determine if it is a fair and reasonable resolution of a bona fide dispute. *See id*. at 1354-55. In determining whether the Agreement is fair and reasonable, the Court should consider the following factors:

> (1) The existence of collusion behind the settlement;
> (2) The complexity, expense, and likely duration of the litigation;
> (3) The state of the proceedings and the amount of discovery completed;
> (4) The probability of plaintiff's success on the merits;
> (5) The range of possible recovery; and

(6) The opinions of counsel.

*See Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994). There is a strong presumption in favor of settlement. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).[1]

In addition to the foregoing factors, the Court must also consider the reasonableness of the attorney fees to be paid pursuant to the settlement agreement "to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351-52 (11th Cir. 2009).[2] The parties may demonstrate the reasonableness of the fees by either: 1) demonstrating the reasonableness of the proposed attorney fees using the lodestar method; or 2) representing that the parties agreed to plaintiff's attorney fees separately and without regard to the amount paid to settle plaintiff's FLSA claim. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

## IV. Consideration of the Agreement

### A. The Settlement.

The Plaintiffs claim that Defendants violated the FLSA (1) by rounding the weekday timeclock clock-in entries to 6:00 a.m., and (2) by a weekday automatic 30-minute lunch deduction. Defendant disputed liability as well as conditional certification. Even prior to this action being filed, Plaintiff engaged in pre-suit mediation with Defendants. Thereafter, the parties

---

[1] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[2] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

engaged in a voluntary exchange of materials and conducted "extensive amounts of written discovery." Doc. 108 at 4. Thereafter, the parties settled this action at mediation. Doc. 115. The parties explained the discovery process, and its effect on settlement negotiations, as follows:

> Defendants collectively produced over 24,000 pages of data and other records that were relevant to the core issues in the case including payroll and time records, time-stamped "Idle Time" reports (demonstrating when the trucks were idle during the day) and GPS reports. Those records resulted in both sides creating damage models that forced the other side to evaluate the true strengths and weaknesses of their respective factual and legal positions. Those models were exchanged, evaluated, critiqued and refined as more discovery was conducted and more information was exchanged by the Parties. Ultimately, the discovery conducted by the Parties revealed that all sides had significant risks and variability in potential outcomes both in terms of potential decertification and at trial.

*Id*.

The parties assert that, "Given the bona fide factual and legal disputes that exist, the proposed settlement provides a fair and reasonable compromise; it affords class-wide relief to the collective without prioritizing a single theory or a subset of the collective." *Id*. at 5. Further, the parties explain that "the settlement provides compensation for all weeks worked during the claim period at the applicable overtime rates; even for hours worked that might have otherwise been paid at a straight-time rate under state or local law." *Id*. at 6. In addition, all damages calculations were multiplied by two, resulting in each member of the Settlement Collective to receive an amount of liquidated damages equal to the amount of wages calculated. *Id*. at 6-9.

The total settlement amount—including wages, liquidated damages, and attorney fees and costs—is $541,093.13. *Id*. at 6-7. The Bobcat Defendants will pay $311,876.13 and the Russo Defendants will pay $229,217.00, with this distribution among Defendants based upon the relative weeks each Plaintiff worked for either the Bobcat or Russo Defendants. *Id*. The attorney fee requested is $185,000.00, and the amount to be paid to each member of the Settlement Collective is stated in the Settlement Collective Chart (Doc. 108-1 at 17).

Upon review, the undersigned finds that this is a fair and reasonable compromise based on the reasons the Plaintiffs articulated for compromising their claims under the FLSA. Therefore, the undersigned **RECOMMENDS** that the Court find that the settlement is a fair and reasonable resolution of Plaintiffs' FLSA claims.

### B. Attorney Fees and Costs.

According to the Motion and the Agreement, Defendants will pay Plaintiff's counsel $185,000.00 in fees and costs. Doc. 108 at 9-10, 20-21. Based upon the representation of pre-suit mediation, counsel has worked on this action even before its November 2017 filing. It has involved extensive discovery, motions practice, and the Settlement Collective numbers 42 members. The parties also state that the attorney fees and costs were negotiated (1) after they agreed to the amounts payable to members of the Settlement Collective and (2) separately and without regard to those amounts. *Id*. The parties' representation adequately establishes the reasonableness of the fees under the Agreement. *See Bonetti*, 715 F. Supp. 2d at 1228.

Therefore, the undersigned **RECOMMENDS** that the Court find the agreement concerning attorney fees and costs does not affect the fairness and reasonableness of the settlement.

### C. The Other Terms of the Agreement

Plaintiffs have agreed to release all wage claims against Defendants related to the operative complaint. Doc. 108-1 at 14. The limited scope of the release allays any concern that Plaintiffs may be giving up unknown, but valuable, claims that are wholly unrelated to the claims at issue in this case. *See, e.g.*, *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346 (M.D. Fla. 2010); *see also Bright v. Mental Health Res. Ctr., Inc.*, Case No. 3:10-cv-427-J-37TEM, 2012 WL 868804 (M.D. Fla. Mar. 14, 2012). Further, the Agreement does not contain any other provisions that are often found to undermine the fairness and reasonableness of an FLSA settlement, i.e., confidentiality

and non-disparagement provisions. *See* Doc. 108-1. Thus, the undersigned **RECOMMENDS** that the Court find that none of the other terms of the Agreement affect the overall fairness and reasonableness of the settlement.

### D. Additional Payment to Plaintiff Huff

The parties have also agreed that Plaintiff Huff will receive a $10,000 payment in exchange for executing a general release, which the parties have filed. Doc. 108-3. While general releases are generally disfavored in FLSA actions, courts have found that parties may enter into a general release for separate consideration. *See, e.g.*, *Bright v. Mental Health Res. Ctr., Inc.*, Case No. 3:10-cv-427-J-37TEM, 2012 WL 868804, at *4 (M.D. Fla. Mar. 14, 2012) (citing *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350-52 (M.D. Fla. 2010)). Here, the separate consideration is a $10,000 payment. Further, the parties are not seeking approval of this separate agreement, they are purporting to simply inform the Court of its existence. Taking the representations in the Motion at face value, the undersigned recommends that the Court not pass on the validity of the separate release, but instead find that it does not affect the fairness of the FLSA settlement in this action as set forth in the Agreement. That said, the undersigned notes that it is somewhat troubling that this release could be interpreted as a de facto service payment to a named plaintiff—a payment that would be unsupported on this record and perhaps improper. Again, the undersigned makes no findings as to the validity of the release.

### V. Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

1. The Motion (Doc. 108) be **GRANTED in part to** the extent that:

    a. The Agreement (Doc. 108-1) be found to be a fair and reasonable settlement of the Settlement Collective's claims under the FLSA;

    b. The case be **DISMISSED with prejudice** as to the members of the Settlement Collective;

    c. The case be **DISMISSED without prejudice** as to Nathaniel Rouch (Doc. 36-1) as he did not meet the requirements of the conditional certification order (see Doc. 108 at 2 n.2); and

    d. The Clerk be directed to close the case.

2. The Motion (Doc. 108) be **DENIED** to the extent it requests that Court retain jurisdiction to enforce the Agreement or for any other purpose, as the Motion fails to support that request with a memorandum of legal authority or any compelling argument.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on January 25, 2021.

                                               DANIEL C. IRICK
                                               UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy